# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

IVANA DJERIC,

    Petitioner,

v.

NIKOLA DJERIC,

    Respondent.

Case No. 2:18-cv-1780
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Elizabeth Preston Deavers

## OPINION AND ORDER

On December 26, 2018, Petitioner Ivana Djeric ("Ms. Djeric") filed her *Petition for Return of Child Pursuant to the Convention on the Civil Aspects of International Child Abduction* (the "Petition for Return") (ECF No. 1) against Respondent Nikola Djeric ("Mr. Djeric"). Ms. Djeric alleges that Mr. Djeric has wrongfully retained their son ("M.D.") in the United States. Ms. Djeric seeks M.D.'s return to Serbia.

Now before the Court is Ms. Djeric's *Petition for Return*. (ECF No. 1). Ms. Djeric has also filed the following motions: *Motion for Temporary Restraining Order* (ECF No. 3), *Motion for Judgment on the Pleadings* (ECF No. 15), and *Motion for Summary Judgment* (ECF No. 18). On February 19, 2019, the Court convened for an evidentiary hearing. The Court heard testimony from Mr. Djeric, who was present, and from Ms. Djeric via video conference from Serbia. Ms. Djeric's *Petition for Return* is now ripe for review. For the reasons set forth below, the Court **GRANTS** Ms. Djeric's *Petition for Return*. (ECF No. 1).

### I.

In 2004, Mr. and Ms. Djeric were married in Serbia and had a son, M.D. In 2013, Mr. and Ms. Djeric divorced. Pet'r.'s Ex. 10. On September 26, 2013, the First Basic Court in

Belgrade, Serbia, granted Ms. Djeric "sole parental right" over M.D., including the rights to "care, upbringing, and custody...." Ex. A to Petition. Thereafter, Mr. Djeric moved to the United States.

In 2014, 2015, 2016, and 2017, Ms. Djeric allowed M.D. to spend summers with Mr. Djeric and his family in Columbus, Ohio. During his summer visits, M.D. stayed with Mr. Djeric's sister who resides in Columbus, Ohio, because Mr. Djeric is a long-haul truck driver. Until 2017, M.D. returned to Serbia after each summer.

In August of 2017, Ms. Djeric allowed M.D. to attend school in Columbus, Ohio, subject to certain terms, which Ms. Djeric laid out in a letter, stating:

> [D.M. can] continue his education in Worthingway Middle School in Columbus .... During his education in the United States, [M.D.] will live with [Mr. Djeric], who will be taking care of him, and consult with me about everything.

Pet'r.'s Ex. 4 at 4. Unbeknownst to Ms. Djeric, by the time she agreed to let M.D. stay in the United States to continue his education, Mr. Djeric had already filed a complaint regarding parental rights in the Franklin County Court of Common Pleas (the "First Franklin Action") in Columbus, Ohio. Pet'r.'s Ex. 6 at 2.

The Franklin Court of Common Pleas dismissed the First Franklin Action for lack of "jurisdiction / divorce decree" on December 29, 2017. That same day and in the same court, Mr. Djeric filed another action, titled "Motion for Change of Parental Rights and Responsibilities (Custody)" (the "Second Franklin Action"). Pet'r.'s Ex. 7. In the Second Franklin Action, Mr. Djeric requested the court to "grant [him] legal custody of [M.D.] and terminate [his] child support obligation." *Id.* at 10. On February 5, 2018, the Franklin County Court of Common Pleas issued an order, acknowledging that Ms. Djeric had not been properly served. *Id.*

On March 17, 2018, Ms. Djeric learned about the Second Franklin Action and began writing letters to the court, stating "I strongly oppose to the plan that [] full custody be given to [Mr. Djeric]." Pet'r.'s Ex. 7 at 28. In another letter, Ms. Djeric writes, "I did not and will not sign any document about giving [] custody to anyone, in this case, to [M.D.]. I will never give up [] my own child." *Id.* at 29. And in another, Ms. Djeric states, "This is already the third letter I am sending you. I don't know what's going on in America, about this case. I'm completely confused by what [Mr. Djeric] is trying through your court. ... I'm scared too, because I just realized it was an attempt to take my child away, for good." *Id.* at 31.

Ms. Djeric also directly communicated with Mr. Djeric, texting him "... I cannot sign the documents where you are asking to disown my child. ... I hereby inform you that the final deadline has been set when [M.D.] has to return to Serbia, which is on May 25, 2018." Pet'r.'s Ex. 13 at 7.

M.D. did not return to Serbia after the school year ended on May 25, 2018. On May 29, 2018, Ms. Djeric filed a "Claim for Return of Child" to the Ministry of Justice and Public Administration of the Central Executive Authority of the Republic of Serbia. Petition at ¶ 28, Ex. H.

## II.

The Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention") is a multilateral treaty adopted by signatory nations "to protect children internationally from the harmful effects of their wrongful removal or retention" and further aims to deter abduction across international borders as a parental self-help remedy. *March v. Levine,* 249 F.3d 462, 465 (6th Cir.2001) (quoting the Hague Convention's preamble). Accordingly, the stated objectives of the Hague Convention are twofold: (1) "to secure the

prompt return of children wrongfully removed or retained in any Contracting State" and (2) "to ensure that rights of custody and of access under the law of the Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1. The Republic of Serbia and the United States of America are signatory nations to the Hague Convention. T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11. In the United States, the Hague Convention has been implemented by Congress through the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9003 *et seq.*

Under ICARA, federal district courts have concurrent jurisdiction with state courts to determine "rights under the Convention [but] not the merits of any underlying child custody claims." 22 U.S.C. §§ 9001(b)(4), 9003(a). In other words, the Convention allows a federal district court to consider the merits of the abduction claim—whether removal or retention was wrongful—but prohibits consideration of the underlying custody dispute. *Friedrich v. Friedrich* ("*Friedrich I*"), 983 F.2d 1396, 1399 (6th Cir. 1993). The Court's inquiry, then, is "whether a child should be returned to a country for custody proceedings and not what the outcome of those proceedings should be." *Holder v. Holder*, 392 F.3d 1009, 1013 (9th Cir. 2004) (citing Hague Convention, art. 19). ICARA mandates that "[c]hildren who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies." 22 U.S.C. § 9001(a)(4).

### III.

A parent requesting a child's return under the Hague Convention carries the burden of establishing wrongful removal or wrongful retention by a preponderance of the evidence. 22 U.S.C. § 9003(e)(1)(A). To establish a *prima facie* case of wrongful retention, Ms. Djeric must demonstrate: (1) M.D. was habitually residing in Serbia and Mr. Djeric retained M.D. in the

4

United States; (2) the retention was a breach of Ms. Djeric's custody rights under Serbian law; and (3) Ms. Djeric exercised her custody rights at the time Mr. Djeric wrongfully retained M.D. 22 U.S.C. § 9003(e)(1). If Ms. Djeric establishes a *prima facie* case of wrongful retention, then the burden shift to Mr. Djeric who may assert an affirmative defense, which, if proven, could prevent the return of the child to the country of habitual residence.

### A. Mr. Djeric Retained M.D. in the United States on May 25, 2018, at which point M.D.'s Habitual Residence was Serbia.

The dispositive inquiry in this case is the country of the child's habitual residence. *See Taglieri v. Monasky*, 907 F.3d 404, 407 (6th Cir. 2018) (en banc). As an initial matter, both parties correctly note, there are five "principles" to consider when determining habitual residence:

> First, habitual residence should not be determined through the technical rules governing legal residence or common law domicile. Instead, courts should look closely at the facts and circumstances of each case. Second, because the Hague Convention is concerned with the habitual residence of the child, the court should consider only the child's experience in determining habitual residence. Third, this inquiry should focus exclusively on the child's past experience. Any future plans that the parents may have are irrelevant to our inquiry. Fourth, a person can have only one habitual residence. Finally, a child's habitual residence is not determined by the nationality of the child's primary care-giver. Only a change in geography and the passage of time may combine to establish a new habitual residence.

*Panteleris v. Panteleris*, 601 F. Appx. 345, 349 (6th Cir. 2015). Therefore, in wrongful retention cases, courts look to the last date upon which it is undisputed that the child was in the new country with both parents' consent. *Karkkainen v. Kovalchuk*, 445 F.3d 280, 290 (3d Cir. 2006)). Specifically, courts look to the date when the non-abducting parent was truly on notice that the abducting parent was not going to return the child. *Blanc v. Morgan*, 721 F. Supp. 2d 749, 762 (W.D. Tenn. 2010).

5

Ms. Djeric contends that the time of wrongful retention is May 25, 2018. To support her argument, Ms. Djeric offers a letter she mailed to M.D.'s school, Mr. Djeric's attorney in Serbia, and the Franklin County Court of Common Pleas. That letter states:

> I, Ivana Djeric, Mother of M.D., ... hereby give my consent and agree that he can stay for the purpose of education in the United States of America, until May 25, 2018. The School is located at the following address:
>
> 6625 Guyer St.
> Worthington, OH, 43085, USA.

Pet'r.'s Ex. 4 at 4. Although Ms. Djeric admits she never sent this letter directly to Mr. Djeric, it is undisputed that Ms. Djeric sent the letter to Mr. Djeric's attorney in Serbia and filed it in early March of 2018 with the Franklin County Court of Common Pleas, where Mr. Djeric had initiated two custody actions. Ms. Djeric argues that by sending this letter to the court and to Mr. Djeric's attorney in Serbia, Mr. Djeric had been notified of the time limit *in haec verba*. Whether Ms. Djeric's letter ever reached Mr. Djeric is irrelevant, however, because Ms. Djeric also offers text messages, dated May 9th, 2018, which require Mr. Djeric to return M.D. to Serbia by May 25, 2018. *See* Pet'r.'s Ex. 13 at 7.

Based on this evidence, the Court concludes that Mr. Djeric wrongfully retained M.D. on May 25, 2018, the date Mr. Djeric kept M.D. from returning to Serbia, thereby defying the limited consent of Ms. Djeric—M.D.'s sole custodian.[1] This is also the date Ms. Djeric (the non-abducting parent) was on notice that Mr. Djeric (the abducting parent) was not returning M.D. to Serbia. *See Blanc*, 721 F. Supp. 2d at 762. Accordingly, to determine M.D.'s habitual residence, the Court must limit the record to evidence related to M.D.'s experiences prior to May 25, 2018.

---

[1] Mr. Djeric claims that Ms. Djeric had previously consented to M.D. staying in the United States without a one-year limitation. Such a purported agreement would be in conflict with the order issued by the Serbian Court and is not otherwise established in the testimony presented.

To begin its analysis, the Court notes that although the Hague Convention does not define "habitual residence," the Sixth Circuit has developed two analytical frameworks to make that determination. *Taglieri*, 907 F.3d at 407. The "primary approach" is the acclimatization standard. *Ahmed*, 867 F.3d at 688–89. "The second approach, a back-up inquiry for children too young or too disabled to become acclimatized, looks to 'shared parental intent.'" *Taglieri*, 907 F.3d at 407 (citing *Ahmed*, 867 F.3d at 689).

In this case, only the acclimatization standard applies. Under this approach, the question is "whether the child has been physically present in the country for an amount of time sufficient for acclimatization and whether the place has a degree of settled purpose from the child's perspective." *Ahmed*, 867 F.3d at 687 (quotations omitted). Some questions relevant to determining if a child has acclimatized to a particular country include: "whether the child participated in academic activities, social engagement, sports programs and excursions, and whether the child formed meaningful connections with the country's people and places." *Taglieri*, 907 F.3d at 408 (citing *Ahmed*, 867 F.3d at 687) (quotation marks omitted).

The parties offer evidence that M.D. has engaged in productive activities during his time in both Serbia and the United States. Over the first thirteen years of his life in Serbia, M.D. achieved academic and athletic success. M.D. enjoyed playing soccer, basketball, and swimming at a local sports club in Belgrade. And, even while in the United States, M.D. has remained in touch with his friends and family in Serbia and he speaks to Ms. Djeric on the phone every day, sometimes for several hours at a time. During his first eight months in the United States, M.D. established close ties with his family—especially his grandmother and aunt. Mr. Djeric testified that M.D. has become friends with several classmates and neighbors. M.D.'s principal, Nathan Kellenberger, testified that M.D. has succeeded in school and has impressed

teachers with his leadership skills and kindness to others. Mr. Kellenberger also explained that during M.D.'s seventh grade schoolyear, he never missed class and was a top academic student.[2]

Based on the evidence presented, determining M.D.'s habitual residence is a close question. Although the record illustrates that M.D. participated in academic activities, social engagements, and sports programs, and formed meaningful connections with others during his brief time in the United States, this evidence does not overcome the significant ties M.D. still holds to Serbia. *See Jenkins v. Jenkins*, 659 F.3d 549, 562 (6th Cir. 2009) ("sufficiency of acclimatization to a new place will vary based on the strength of a child's relationship with his or her prior habitual residence.") Since there is no dispute that M.D.'s prior habitual residence was Serbia, the evidence must establish a *change* in habitual residence to the United States. *Id.* Mr. Djeric has not carried that burden. M.D. lived in Serbia for thirteen years and, by all accounts, thrived academically, athletically, and socially. It is no surprise then that M.D. transitioned so well during his stay in the United States. Still, the Court is not convinced that M.D.'s success in the United States over a brief period transcends the meaningful connections that M.D. established over his thirteen years in Serbia. Therefore, the Court finds that Serbia is M.D.'s habitual residence.

## B. When Mr. Djeric Wrongfully Retained M.D., Ms. Djeric Exercised Her Custodial Rights.

Mr. Djeric concedes that Ms. Djeric has established the last two elements of her *prima facie* case. First, Mr. Djeric acknowledges that the First Basic Court of Belgrade granted Ms. Djeric "sole custody" over M.D. Second, Mr. Djeric concedes that his refusal to return M.D. to Serbia violates the First Basic Court's order, which granted Ms. Djeric the rights to "care,

---

[2] On that note, the Court commends Mr. and Ms. Djeric for raising an outstanding young man and for treating each other with mutual respect during these difficult proceedings.

8

upbringing, and custody" of M.D. Ex. A to Petition. Therefore, Ms. Djeric has established her *prima facie* case for wrongful retention under the Hague Convention and ICARA. The burden now shifts to Mr. Djeric to establish an affirmative defense.

**C. Mr. Djeric Fails to Establish an Affirmative Defense.**

The Hague Convention provides that Mr. Djeric can establish an affirmative defense if he proves by clear and convincing evidence that: (1) there is a grave risk that returning the child would expose him to physical or psychological harm; or (2) that returning the child "would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms." Hague Convention, art. 20, 22 U.S.C. § 9003(e)(2)(A). Mr. Djeric may alternatively prevail by establishing by a preponderance of the evidence that: (1) the proceeding was commenced more than one year after the wrongful retention and that M.D. has become settled in his new environment; or (2) that Ms. Djeric was not actually exercising custody rights at the time of retention or had consented to or subsequently acquiesced in the retention. Hague Convention, art. 13, 22 U.S.C. § 9003(e)(2)(B).

In his memoranda, Mr. Djeric lists the six defenses that he raised in his Answer (ECF No. 13), which collectively amount to one affirmative defense: that Ms. Djeric had consented to or subsequently acquiesced in Mr. Djeric's retention of M.D.. *See* 22 U.S.C. § 9003(e)(2)(B). Ms. Djeric contends that this defense does not apply because Mr. Djeric fails to meet the requisite standard, which is narrowly construed and has a high evidentiary bar. Indeed, the affirmative defense of consent or acquiescence by the petitioner "requires either (1) a formal act or statement, such as testimony in a judicial proceeding, (2) a written renunciation of rights, or (3) a consistent attitude of acquiescence over a significant period of time." *Flores-Aldape v. Kamash*, 202 F. Supp. 3d 793, 804 (N.D. Ohio 2016) (citing *Friedrich v. Friedrich*, 78 F.3d 1060, 1070

(6th Cir. 1996) ("*Friedrich II*")). Mr. Djeric focuses on the second type, arguing that Ms. Djeric's letter, dated August 11, 2017, amounts to a written renunciation of custody rights over M.D. This argument is not well taken.

In the letter dated August 11, 2017, Ms. Djeric stated "[d]uring his education in the United States, [M.D.] will live with his father, [Mr. Djeric], who will be taking care of him, and consult with me about everything." Resp't.'s Ex. A. For one, Ms. Djeric's declaration that Mr. Djeric "will be taking care" of M.D. while he continues his education in the United States is consistent with her custodial powers under the Serbian Divorce Decree. *See* Petition, Ex. A. Moreover, Ms. Djeric has consistently refused to renounce—or even reduce—her sole parental rights over M.D. Therefore, the Court concludes that the Ms. Djeric did not renounce her rights with the August 11, 2017 letter.

Additionally, nothing in the record illustrates that Ms. Djeric consented to or acquiesced in Mr. Djeric's wrongful retention of M.D. To be sure, Ms. Djeric permitted M.D. to spend his summers with his father in the United States. And, when Ms. Djeric later allowed M.D. to attend school in the United States, she expanded the scope of M.D.'s visit. Ms. Djeric did not, however, consent to M.D. staying in the United States indefinitely or acquiesce to Mr. Djeric's custody over M.D. To the contrary, Ms. Djeric limited M.D.'s stay in the United States to the 2017–2018 school year. *See* Pet'r.'s Ex. 13 at 7 (text sent on May 9, 2018, states: "I hereby inform you that the final deadline has been set when [M.D.] has to return to Serbia, which is on May 25, 2018.") Therefore, the affirmative defense of acquiescence or consent of Ms. Djeric does not apply.

Finally, Mr. Djeric points out that Article 13 of the Hague Convention provides that a district court "may refuse to order the return of the child if it finds that the child objects to being

10

returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." During an *in camera* discussion with M.D., the Court learned that M.D. enjoys the United States and prefers to stay here. While M.D.'s maturity and demeanor were undeniably impressive, the Court will not exercise its discretionary power to refuse ordering his return because M.D.'s stated preference did not amount to a "particularized objection." *See Neumann v. Neumann*, 310 F. Supp. 3d 823, 835 (E.D. Mich. 2018) ("courts have required that children subject to the Convention set forth particularized reasons why they object to return, as opposed to a generalized opposition"). As a result, none of the affirmative defenses apply.

This Court returns this case to the First Basic Court in Belgrade, Serbia, which originally established custody of M.D. The only final issue resolved in this decision is that the proper forum to determine future custody is in Belgrade, Serbia.

## IV.

In conclusion, the Court **GRANTS** Ms. Djeric's *Petition for Return of the Child*. (ECF No. 1). Accordingly, the Court **DISMISSES as MOOT** Ms. Djeric's *Motion for Temporary Restraining Order* (ECF No. 3), *Motion for Judgment on the Pleadings* (ECF No. 15), and *Motion for Summary Judgment*. (ECF No. 18). The Court **ORDERS** the following:

(1) M.D. shall leave the United States on May 24th to return to the Republic of Serbia;

(2) Counsel for Mr. Djeric shall file a notice with the Clerk of Court immediately upon M.D.'s arrival in Serbia indicating that Mr. Djeric has complied with the terms of this order.

**IT IS SO ORDERED.**

3-5-2019
DATE

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE